UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**CARMEN CORREA**
on behalf of herself and all others
similarly situated
                                    Plaintiff.

v.

**COURTNEY E. HAWKINS,** in her
official capacity as
Director of the Rhode Island Department        CLASS ACTION
of Human Services                                        COMPLAINT

                        Defendant.

_____  /


## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff is a low-income individual who receives Supplemental Nutrition

    Assistance Program ("SNAP") benefits, also known as food stamps.  She

    received a document from the Department of Human Services ("DHS")

    entitled "DEMAND LETTER FOR SNAP OVERISSUANCE"  ("Overissuance

    Demand Letter" or "Demand Letter"), attached hereto as Exhibit A.[1] This letter

    demanded that she repay the $1,925 in benefits that Defendant calculated

    was allegedly overpaid by Plaintiff during the period May 1, 2014 through

_____

[1] Because Ms. Correa, who was born in Puerto Rico, speaks Spanish, she
received a letter in Spanish.  Its title is "CARTA DE REQUIERIMENTO POR
SOBREPAGO DE SNAP."

March 31, 2015.  The agency identified type of overpayment ("Agency Error")
but did not identify the cause of the alleged overissuance or explain how it
was calculated.

2.  The Demand Letter requested that Plaintiff repay the funds or enter into a
repayment agreement to repay the funds within thirty days of the notice.

3.  The Demand Letter states that if she does not enter into a repayment
agreement, DHS will take further action to recover the overissuance, including
reducing her SNAP payment allotment.

4.  The Demand Letter also states that she has a right to a hearing if she files an
appeal within 90 days of the date of this notice.

5.  The Demand Letter does not contain sufficient information to allow a reader to
determine whether the overissuance is correct or whether Plaintiff has ground
to contest it.

6.  Accordingly, Plaintiff brings this action on behalf of herself and a proposed
class of similarly situated low-income individuals challenging Defendant's
policies and practices of sending SNAP Overissuance Demand Letters that
fail to identify the cause of the alleged overissuance and fail to contain any
explanation of how any overissuance was calculated.

7.  Plaintiff seeks an injunction enjoining Defendant (a) from sending SNAP
Overissuance Demand Letters which fail to identify the cause of overissuance
and to explain how the overissuance was calculated; (b) from taking any
action to recoup alleged overissuance or reduce SNAP benefits based upon
such inadequate Overissuance Demand Letters; and (c) to retroactively

restore reductions of any overissuances to class members based upon the inadequate Overissuance Demand Letters.

## JURISDICTION

8. Jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331, which provides for jurisdiction in the United States district courts over civil actions arising under the Constitution, laws, or treaties of the United States, as well as 28 §§ 1343, 2201, and 2202.

9. This action is brought under 42 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to this claim occurred within the judicial district of Rhode Island.

## CLASS ALLEGATIONS

11. Plaintiff brings this action under Federal Rule of Civil Procedure Rule 23(a) and (b)(2) on behalf of a class defined as follows:

> All Rhode Island residents who, since May 1, 2019,
> received or will in the future receive a Demand Letter for
> SNAP Overissuance.

12. The class is so numerous that joinder of all members is impracticable.  DHS has acknowledged that, as of June 25, 2019, 76 Demand Letters for SNAP Overissuance had been sent.  On information and belief, since then, Demand Letters have been sent to scores of SNAP recipients, and hundreds more may receive such letters in the future.

13. There are numerous questions of fact and law common to the class

concerning whether Defendant's Overissuance Demand Letters fail to provide adequate notice of the alleged overissuance.

14. The individual Plaintiff seeking to represent the class presents claims that are typical of the claims of the class. Both the named Plaintiff and absent members of the class have received or will receive Overissuance Demand Letters that identify type of overissuance but fail to identify cause of overissuance and to include an explanation of how the overissuance was calculated.

15. Declaratory and injunctive relief are appropriate with respect to the class as a whole because Defendant has acted on grounds applicable to the class.

16. The named Plaintiff will adequately represent the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and the proposed class is represented by Ellen Saideman and Lynette Labinger, who are both experienced in class action litigation and public benefits litigation in federal court. They will adequately represent the class.

**PARTIES**

17. Carmen Correa is a resident of Woonsocket, Rhode Island, and lives in a household composed of herself and her thirteen-year-old niece.  She receives SNAP benefits for herself and her niece. Carmen received an Overissuance Demand Letter, Exhibit A hereto, dated September 23, 2019, stating that she had received an overissuance of $1,925 during the period May 1, 2014-March 31, 2015.  While the Demand Letter identified the type of overissuance, as

"Agency Error," it did not identify the cause of the overissuance and did not provide an explanation of how it calculated the overissuance.

18. Defendant Courtney E. Hawkins is the Director of the Rhode Island Department of Human Services ("DHS"), the state agency responsible for administering the SNAP program in Rhode Island and ensuring compliance with federal law related to SNAP. She is sued in her official capacity.  With respect to the matters complained of herein, Defendant Hawkins has acted under color of state law within the meaning of 42 U.S.C. §1983.

**STATUTORY AND REGULATORY SCHEME**

19.  SNAP is a federally-funded, state administered program.  Congress established the Food Stamp Program, now known as SNAP, in 1964 to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households."  Pub. L No. 88-525, § 2, 78 Stat. 703 (codified at 7 U.S.C. § 2011).  In order to "alleviate . . . hunger and malnutrition," Congress enacted the Food Stamp Program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing the food purchasing power for all eligible households who apply for participation."  *Id.*

20. Effective October 1, 2008, the federal Food Stamp Program was renamed the Supplemental Nutrition Assistance Program ("SNAP"), and the federal Food Stamp Act was renamed the Food and Nutrition Act of 2008.  Pub. L. No. 110-246, §§ 4001-02, 122 Stat. 1651, 1853-1860.

21. In Rhode Island, SNAP benefits are also known as "Food Stamps."

22. The federal government provides complete funding to the states for all SNAP benefits, and at least 50% of the states' administrative costs involved in their operation of the program.  7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. § 277.1(b), 277.4.

23. Each state must designate a single state agency responsible for administering SNAP and complying with federal statutory and regulatory requirements.  7 U.S.C § 2020(a), (d) and (e); 7 C.F.R. §§ 271.4(a), 277.4.  The state agency's responsibilities include recouping overissuances made to SNAP recipients.  7 C.F.R. § 273.18(a)(2)&(3).

24. Rhode Island participates in SNAP.  The Department of Human Services is the single state agency responsible for administering SNAP in Rhode Island, in compliance with federal statutes and implementing SNAP regulations.  R.I. Gen. Laws § 40-6-8.

25. DHS must provide "timely, accurate, and fair services to applicants for and participants in" SNAP and must provide for the granting of a fair hearing.  7 U.S.C. § 2020(e)(2)(B)(i), § 2020(e)(10).

26. To be eligible for SNAP, households' net income, after specified allowable exclusions and deductions, must be below the federal poverty line.  In the case of certain households that do not include an elderly or disabled member, the net income, after specified allowable exclusions but before specified

allowable deductions, must not exceed the poverty line by more than 30 percent.  7 U.S.C. § 2014(c).

27. The federal regulations provide for claims against SNAP recipients for benefits that have been overpaid.  7 C.F.R § 273.18(a)(i).  The state agency, DHS, is required "to establish and collect any claim by following these regulations."  7 C.F.R. § 273.18(a)(2).

28. The regulations set forth three types of claims:  (1) Intentional Program Violation  ["IPV"], (2) Inadvertent Household error ["IHE"], and (3) Agency error ["AE"].  7 C.F.R. § 273.18(b).

29. The State agency must calculate the claim back to at least twelve months prior to when it became aware of the overpayment and cannot include amounts that occurred more than six years before the agency became aware of the overpayment.  7 C.F.R. § 273.18(c)(1).

30.  The regulations require that each State agency develop and mail written notice to the household to begin collection action on any claim. 7 C.F.R. § 273.18(e)(3)(i).  If the claim "was not established at a hearing, the State agency must provide the household with a one-time notice of adverse action.  The notice of adverse action may either be sent separately or as part of the demand letter."  7 C.F.R. § 273.18(e)(3)(iii).

31. The initial demand letter must include the type of claim, the reason for the claim, and an explanation of how the overissuance was calculated.  7 C.F.R. § 273.18(e)(3)(iv).

32. For current SNAP recipients, the State Agency may recoup the overissuance by collecting for an IHE or AE claim, the greater of $10 per month or 10 percent of the household's monthly allotment. 7 C.F.R. § 273.18(e)(g)(iii).

## FACTUAL ALLEGATIONS

### Facts Common to the Class

33. Prior to September 2016, DHS used a decades old computer system called "InRhodes" to determine eligibility and to calculate benefits and overissuances for SNAP and other public assistance programs.

34. In September 2016, DHS replaced InRhodes with the Unified Health Infrastructure Project, or UHIP, a single integrated electronic eligibility system that would determine eligibility for all public assistance programs.  UHIP went live in September 2016.

35. In a May 31, 2016 letter to Defendant, FNS stated that the pilot testing of RIBridges by DHS was insufficient.  FNS stated, "Therefore, it is our decision not to allow the State to implement as planned.  FNS is requiring a full three month Pilot in a live production environment followed by a phased statewide implementation of Bridges."

36. On June 27, 2016, DHS forwarded to FNS a draft document entitled "DHS Transition Document:  Operational Protocol for DHS Field Offices During System Transition from InRhodes to RI Bridges."

37. In a letter to Defendant dated August 15, 2016, FNS stated it had not yet received, despite having requested, a final plan of transition to RIBridges. FNS informed Defendant that during the transition period, DHS remained

responsible for complying with federal SNAP statutes and regulations, and that "it must take action to minimize the potential negative impacts on program administration in the State while adhering to all requirements pertaining to program access and integrity."

38. Despite the non-concurrence of FNS, Defendant decided to proceed with statewide implementation of RIBridges on September 13, 2016.

39. Defendant's implementation of RIBridges has been plagued with programming problems and systems errors.

40. On information and belief, although RIBridges went live on September 13, 2016, demands to recoup overissuances were halted and not processed through RIBridges until after May 1, 2019.

41. On information and belief, in or about May 2019, FNS approved a pilot project to process demands for repayment of overissuances for approximately 200 individuals.  The demands were limited to overissuances that were made prior to the "go live" date for UHIP of September 2016.

42. On information and belief, starting on or about May 15, 2019, form Overissuance Demand Letters were generated to approximately 200 individuals which identified the type of overissuance (Agency Error or Household Error), month(s) of overissuance, amount of SNAP benefits issued and allegedly due, and total amount of overissuance. However, the Demand Letters did not include the reason for overissuance or an explanation of how the overissuance was calculated.

43. On information and belief, on or about November 1, 2019, FNS approved a second pilot project to process demands for overissuances for another 200 individuals regarding overissuance incurred prior to September 2016. On information and belief DHS sent this group the same Demand Letter described in paragraph 42.

44. On information and belief, there is a significant pool of SNAP overissuance claims yet to be processed, including both pre-UHIP and post-UHIP claims. These claims may number in the thousands.

45. On information and belief, at any point, DHS may process claims for additional individuals regarding overissuances including both those incurred prior to September 2016 and those incurred subsequent to the UHIP Go Live date.

**Facts of Individual Named Plaintiff**

46. **Carmen Correa** resides in Woonsocket, Rhode Island in a household consisting of herself and her thirteen-year-old niece.  She has custody of her niece and provides for her.

47. Plaintiff receives SNAP benefits in the amount of $350 each month to provide food for herself and her niece.

48. Plaintiff began receiving SNAP benefits from the State of Rhode Island in about 2014.  She also receives child support benefits of about $150 per month for her niece.

49. On September 23, 2019, she received a letter from the Department of Health Services ("DHS") entitled "CARTA DE REQUERIMIENTO POR

SOBREPAGO DE SNAP," Exhibit A hereto ("Overissuance Demand Letter" or "Demand Letter") stating that she had received an overpayment of $1,925 during the period of May 1, 2014 to March 31, 2015.

50. The Demand Letter is the only form of notice provided to Plaintiff concerning the alleged overissuance.

51. The Demand Letter identifies the "type" of error as "Agency Error" but fails to provide any statement or explanation of the basis or reason for claimed overissuance or how it was calculated.

52. The Demand Letter asked Plaintiff to sign a payment agreement and pay the amount of $1,925 by October 23, 2019, and notified Plaintiff that if she did not sign an overpayment agreement, DHS would cut her SNAP benefits by the greater of $10/month or 10% of her benefits ($35).

53. The Demand Letter was inadequate and failed to contain the information required by federal law.

54. Because her monthly income consists of only the $150 in child support and the SNAP benefits, any reduction of SNAP benefits will be harmful for both Plaintiff and her niece.

## STATEMENT OF CLAIMS

## FIRST CLAIM (Violation of
## SNAP Act)

55.  The SNAP statute requires that a State provide for procedural due process, including a fair hearing, whenever SNAP benefits are denied, terminated, or reduced. 7 U.S.C. § 2020(e)(10).

56.  Federal regulations require state agencies to include in a demand letter for a SNAP overissuance claim the reason for the claim and an explanation of how it was calculated.  7 C.F.R. § 273.18(e)(3)(IV)(C)&(F).

57. Defendant's form Overissuance Demand Letters omit a reason for overissuance and provide no explanation of its calculations.

58. Defendant's policies, practices, and procedures of failing to provide adequate written notice of overissuances to individuals violate the requirements of 42 U.S.C. § 1983, 7 U.S.C. § 2020(e)(10) and,7 C.F.R. § 273.18.

## SECOND CLAIM (DUE
## PROCESS)

59. Defendant's policies, practices, and procedures of failing to provide adequate written notice of SNAP overissuances violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks that this Court enter judgment in favor

of Plaintiff and the class she represents, as follows:

A.    Assume jurisdiction of this matter;

B.    Certify this action as a class action under Rule 23(a) and 23(b)(2) of the

Federal Rules of Civil Procedure with respect to the proposed class

identified herein.

C.    Declare that Defendant's policies and practices of failing to provide an

adequate written notice to SNAP recipients in the Overissuance Demand

Letters violate (1) the SNAP statute, 7 U.S.C. § 2020(e)(10), and

regulations, 7 C.F.R. § §273.18, and (2) the Due Process Clause of the

Fourteenth Amendment to the United States Constitution and 42 U.S.C. §

1983.

D.    Temporarily, preliminarily and permanently enjoin Defendant: (1) from

issuing Overissuance Demand Letters without adequate written notice; (2)

from taking any action to reduce Plaintiff's SNAP benefits and those of

other class members or recoup a claimed overissuance based upon

Demand Letters previously issued; and (3) to reinstate individual class

members whose SNAP benefits were reduced without adequate advance

notice and provide them with retroactive benefits.

E.    Award Plaintiff litigation costs and reasonable attorney's fees, pursuant to

42 U.S.C. § 1988 and

F.   Grant such other, further, or different relief as the Court may deem just

and proper.

Respectfully submitted by:

/s/ Ellen Saideman
Ellen Saideman, Esq. (Bar #6532)
Law Office of Ellen Saideman
7 Henry Drive
Barrington, RI  02806
401.258.7276
fax 401.709.0213
esaideman@yahoo.com
Lead Counsel

/s/ Lynette Labinger
Lynette Labinger, Esq., (Bar No. 1645)
128 Dorrance Street, Box 710
Providence, RI  02903
Telephone:  401.465.9565
LL@labingerlaw.com

Cooperating counsel
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF RHODE ISLAND